RECORD NO. 15-1554

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

———————————

ROBERT HILL; MARY HILL, his wife, individually
and on behalf of all others similary situated,

*Plaintiffs - Appellants,*

v.

SCA CREDIT SERVICES, INC.,

*Defendant - Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

———————————

**OPENING BRIEF OF APPELLANTS**

———————————

Ralph C. Young
Jed R. Nolan
HAMILTON, BURGESS, YOUNG
& POLLARD, PLLC
P. O. Box 959
Fayetteville, WV 25480
(304) 574-2727
jnolan@hamiltonburgess.com

Troy N. Giatras
THE GIATRAS LAW FIRM, PLLC
Suite 400
118 Capitol Street
Charleston, WV 25301
(304) 343-2900
troy@thewvlawfirm.com

*Counsel for Appellants*

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
A Division of Lantagne Duplicating Services

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1554__    Caption: ROBERT HILL and MARY HILL,et al. v. SCA CREDIT SERVICES, INC.

Pursuant to FRAP 26.1 and Local Rule 26.1,

ROBERT HILL and MARY HILL, his wife, individually and on behalf of all others similarly situated
(name of party/amicus)

_____

who is _____APPELLANTS_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?    ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
     If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____June 9, 2015_____

Counsel for: ROBERT HILL and MARY HILL

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____06/09/2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John T. Jessee, Esquire
Paul C. Kuhnel, Esquire
Kevin P. Oddo, Esquire
Joseph M. Rainsbury, Esquire
LeClairRyan
Drawer 1200
Roanoke, Virginia 24006

Jed R. Nolan, Esquire
Ralph C. Young, Esquire
HAMILTON, BURGESS, YOUNG & POLLARD, PLLC
P.O. Box 959
Fayetteville, West Virginia 25840

_____     _____June 9, 2015_____
(signature)              (date)

# Table of Contents

Page

Corporate Disclosure

Table of Contents...............................................i

Table of Authorities.........................................iii

JURISDICTIONAL STATEMENT........................................1

STATEMENT OF ISSUES............................................1

STATEMENT OF THE CASE..........................................2

    STATEMENT OF THE FACTS....................................2

    PROCEDURAL HISTORY........................................6

SUMMARY OF ARGUMENT............................................7

ARGUMENT.......................................................8

    Standard of Review........................................8

    I.    COURTS CAN LOOK TO THE SIMILAR FDCPA TO ENSURE ENFORECMENT OF THE REMEDIAL PURPOSE OF THE WVCCPA....10

    II.   SCA VIOLATED THE WVCCPA BY MISREPRESENTING ITS DEBT COLLECTION TACTICS.............................14

        A.    SCA misrepresented to Appellants that it would take legal action when SCA never intended to take any............................14

            1.    SCA's "FINAL WRITTEN NOTICE" was not a final written notice......................17

            2.    SCA's "NOTICE OF LEGAL ACTION" was not a notice of legal action....................19

        B.    SCA misrepresented to Appellants that it would seek legal remedies that it never intended to pursue.......................................21

        C.    SCA threatened abusive and harsh future debt collection......................................23

i

D.  SCA deceptively withheld the name of the original creditor from debtors...................24

E.  SCA threatened to charge illegal fees...........26

CONCLUSION......................................................28

REQUEST FOR ORAL ARGUMENT......................................29

CERTIFICATE OF COMPLIANCE......................................30

CERTIFICATE OF FILING AND SERVICE.............................31

## TABLE OF AUTHORITIES

### CASES

*Anheuser-Busch, Inc. v. Schmoke*,
   63 F.3d 1305 (4th Cir.1995)..................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................9

*Baker v. G.C. Services Corp.*,
   677 F.2d 775 (9th Cir.1982)................................14

*Barr v. NCB Management Services, Inc.*,
   227 W. Va. 507, 711 S.E.2d 577 (2011).....................11

*Bartlett v. Heibl*,
   128 F.3d 497 (7th Cir. 1997)..............................14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................9

*Bentley v. Great Lakes Collection Bureau*,
   6 F.3d 60 (2d Cir. 1993)..................16, 17, 21, 22, 25

*Bourne v. Mapother & Mapother, P.S.C.*,
   998 F. Supp. 2d 495 (S.D.W. Va. 2014).....................11

*CashCall, Inc. v. Morrisey*,
   No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014)........15

*CashCall, Inc. v. Morrisey*,
   No. 12-1274, 2014 WL. 2404300 (W. Va. May 30, 2014)
   cert. denied 135 S. Ct. 2050 (2015).......................27

*Clomon v. Jackson*,
   988 F.2d 1314 (2d Cir.1993)...........................14, 25

*Damasco v. Clearwire Corp.*,
   662 F.3d 891 (7th Cir. 2011)...............................7

*De Amaral v. Goldsmith & Hull*,
   2014 WL 572268 (N.D. Cal. Feb. 11, 2014)..................14

*Estate Const. Co. v. Miller & Smith Holding Co.*,
   14 F.3d 213 (4th Cir. 1994)................................9

*Fleet v. Webber Springs Owners Association, Inc.*,
No. 14-0637, 2015 WL 1880224 (W. Va. Apr. 23, 2015)....11, 16

*Gammon v. GC Services Ltd. Partnership*,
27 F.3d 1254 (7th Cir. 1994)...........................18, 24

*Gonzales v. Arrow Financial Services, LLC*,
489 F. Supp. 2d at 1149 (S.D.Cal.2007) *aff'd,* 660 F.3d
1055 (9th Cir.2011).......................................13

*Harper v. Better Business Services, Inc.*,
961 F.2d 1561 (11th Cir.1992).............................14

*Harper v. Jackson Hewitt, Inc.*,
227 W. Va. 142, 706 S.E.2d 63 (2010).....................11

*Isham v. Gurstel, Staloch & Chargo, P.A.*,
738 F. Supp. 2d 986 (D.Ariz.2010).........................25

*JLS NLS*,
2011 WL. 3176453 (S.D. Cal. July 26, 2011)................25

*Jeter v. Credit Bureau, Inc.*,
760 F.2d 1168 (11th Cir.1985).............................16

*Johnson v. Mueller*,
415 F.2d 354 (4th Cir. 1969)...............................9

*MacKethan v. Peat, Marwick, Mitchell & Co.*,
439 F. Supp. 1090 (E.D.Va. 1977)...........................9

*Martin Marietta Corp. v. International Telecommunications
Satellite Organization*,
978 F.2d 140 (4th Cir.1992)....................2, 3, 4, 5, 8

*Masuda v. Thomas Richards & Co.*,
759 F. Supp. 1456 (C.D.Cal.1991)..........................16

*Ex rel.* McGraw v. Scott Runyan Pontiac-Buick, Inc.,
194 W. Va. 770, 461 S.E.2d 516 (1995).....................11

*McMillan v. Collection Professional, Incorporated*,
455 F.3d 754 (7th Cir. 2006)..............................10

*Pennington v. Teufel*,
396 F. Supp. 2d 715 (N.D.W. Va. 2005) *aff'd sub nom.
Pennington v. Tuefel*, 169 F. App'x 161 (4th Cir. 2006)......9

iv

*Ramsay v. Sawyer Prop. Management of Maryland LLC*,
    2014 WL 6892717 (4th Cir. Dec. 9, 2014).....................12

*Russell v. Absolute Collection Services, Inc.*,
    763 F.3d 385 (4th Cir. 2014)...............................12

*Schneider v. TSYS Total Debt Management, Inc.*,

    No. 06-C-345, 2006 WL 1982499 (E.D. Wis. July 13, 2006)....10
*Schatz v. Rosenberg*,
    943 F.2d 485 (4th Cir.1991), *cert. denied,* 503 U.S.
    936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992).................9

*Skinner v. Switzer*,
    131 S. Ct. 1289, 562 U.S. 521, 179 L. Ed. 2d 233 (2011).....9

*Terran v. Kaplan*,
    109 F.3d 1428 (9th Cir. 1997)..............................13

*Tolentino v. Friedman*,
    46 F.3d 645 (7th Cir.1995).................................14

*Tourgeman v. Collins Finance Services, Inc.*,
    No. 08-CV-1392, *JLS NLS*, 2011 WL. 3176453
    (S.D. Cal. July 26, 2011)..............................25, 26

*Trans World Accounts, Inc. v. FTC*,
    594 F.2d 212 (9th Cir.1979)................................16

*United States v. National Finance Services, Inc.*,
    98 F.3d 131 (4th Cir. 1996).......12, 15, 16, 19, 20, 21, 23

*Wallace v. Washington Mutual Bank, F.A.*,
    683 F.3d 323 (6th Cir. 2012)...............................26

**STATUTES**

12 U.S.C. § 1291 ...............................................1
15 U.S.C. § 1692e.............................................18
15 U.S.C. § 1692e(5).......................................15, 21
15 U.S.C. § 1692e(10)......................................15, 24
15 U.S.C. § 1692f(1).........................................27
15 U.S.C. § 1692g(a)(2)......................................25
15 U.S.C. § 1692k............................................25
Class Action Fairness Act, 28 U.S.C. §§ 1332, 1441, 1446,
    1453......................................................1, 6

v

*W. Va. Code* § 46A-2-124.....................................14, 15
*W. Va. Code* § 46A-2-124(f)..................................12, 22
*W. Va. Code* § 46A-2-127........................14, 15, 18, 24
*W. Va. Code* § 46A-2-124(d)..................................23, 26
*W. Va. Code* § 46A-2-124(e)......................................21
*W. Va. Code* § 46A-2-127(c)..................................24, 26
*W. Va. Code* § 46A-2-127(g)......................................27

**RULES**

Fed. R. Civ. P. 12(b)(6)......................................2, 8

## JURISDICTIONAL STATEMENT

This proceeding arises out of SCA Credit Service, Inc.'s attempts to collect purported debt from West Virginia residents. Appellants filed the underlying case due to SCA Credit Service, Inc.'s abusive and harassing debt collection activities in the Circuit Court of Raleigh County, West Virginia. [Appendix 15] After the case was filed, SCA removed the case to the United States District Court for the Southern District of West Virginia, at Beckley, pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1441, 1446 and 1453, alleging that over seven thousand West Virginia residents had received over ten thousand collection letters that Appellants alleged violated the West Virginia Consumer Credit and Protection Act. [Appendix 7]

After removal, SCA filed a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure. [Appendix 48-49] The District Court granted SCA's motion to dismiss. [Appendix 146] Appellants timely filed this appeal pursuant to 12 U.S.C. 1291. [Appendix 147]

## STATEMENT OF ISSUES

Appellants Robert and Mary Hill alleged numerous violations of the West Virginia Consumer Credit and Protection Act found in SCA's collection letters. [Appendix 60] Appellants alleged that SCA's letters caused them to fear harsh, vindictive, and abusive collection attempts and contained false threats and deceptive language.

[Appendix 60-62]  Despite these clear allegations, and despite the fact that the abusive collection letters were attached to Appellants' complaint, the District Court substituted its judgment for that of the "least sophisticated" consumer and declined to recognize the remedial purpose of the WVCCPA when ruling "[n]othing in the letters could be construed, even by the least sophisticated consumer, as a threat of anything more than continued lawful debt collection attempts, and of potential legal action."  [Appendix 145]

This appeal seeks a ruling stating that the Appellants not only sufficiently plead facts to survive a 12(b)(6) motion, but also demonstrated, through their pleading and exhibits, SCA's unlawful collection practices.

## STATEMENT OF THE CASE

## STATEMENT OF FACTS

Appellants Robert and Mary Hill (herein "Appellants") received multiple collection letters from Appellee SCA Credit Services, Inc. (herein "SCA").  [Appendix 74-80]1 One letter, sent to Appellants on February 6, 2013 [Appendix 61], purports to provide Appellants "NOTICE OF COLLECTION ACTIVITY," and states that "[a]t the request

---

1 Although three letters list the date as October 15, 2014, that is merely the date when SCA printed the form letters.  Appellants received the letters in the order in which the letters are attached as Exhibits 1 through 4 at Appendix 73-80, and as listed in Plaintiff's Amended Class Action Complaint at Appendix 61-62. This court must treat factual allegations in the Appellants' Complaint as true. *Martin Marietta Corp. v. International Telecommunications Satellite Org.,* 978 F.2d 140, 142 (4th Cir.1992).

2

of our client we are preparing to assess an interest charge to the unpaid balance." [Appendix 74] SCA does not identify who the "client" is at any place on the collection letter. *Id*. Whether the alleged debt arose from a credit card, vehicle loan, medical issue, or any other possibility is left a complete mystery in SCA's debt collection notices. [Appendix 74-80] Appellants were left to guess the reason and cause for the alleged indebtedness, which is material to the nature of collections. *Id*. SCA undeniably failed to disclose the name of the **original** creditor for whom it was collecting or the nature of the indebtedness. *Id*. Nor does SCA identify any grounds upon which it would be entitled to charge interest to Appellants' alleged account. [Appendix 74] Even worse, SCA's threat to charge interest is completely without basis, as the debt at issue in this case is believed to be a medical debt. SCA cannot prove any set of facts that would entitle it to collect interest on this account, yet it made the threat to add interest anyway.

In a second letter sent four months later on June 26, 2013 [Appendix 61], SCA stated that "[w]e feel we have done everything we can do to work with you in a *friendly manner* to get this account paid. Now, unless we receive payment immediately, we will have to proceed with further collection action against you." [Appendix 76(emphasis added)] SCA further chastised Appellants, stating "you have promised to pay, but you have not kept your promise." *Id*. SCA closed its letter by stating "unless we receive payment immediately,

3

we will have to proceed with further collection action against you." *Id*. SCA sent the same letter, with the same threats, on September 30, 2013. [Appendix 61] Again, SCA is sending thousands of debt collection letters with false and misleading information.

On August 15, 2014 [Appendix 62], SCA sent a letter that further impugned Appellants' integrity by stating "[o]ur client has expressed a willingness to take legal action to collect debts *of people who are able to pay*, but do not make satisfactory payment arrangements." [Appendix 80 (emphasis added)] However, SCA did not show any basis for claiming that Appellants were able to pay. Appellants alleged that they "feared harsh, vindictive, or abusive collection attempts would follow." [Appendix 62] Along with this threat, SCA failed to identify its client or the original creditor. [Appendix 76, 80]. In maintaining its pattern of false threats, SCA threatened legal action and misrepresented that consumers are "able to pay" when the truth is that no legal action will ever actually be taken, and SCA has no knowledge of the consumer's ability to pay.

SCA sent another misleading collection letter on November 21, 2013 [Appendix 61], this time alerting the Appellants that it was their "FINAL WRITTEN NOTICE!" [Appendix 61, ¶ 14-16; Appendix 78] This letter threatened that "[a] review of your account indicates that *additional* collection action may be necessary to collect this debt." *Id*. Again, Appellants alleged that they feared harsh, vindictive, or abusive collection attempts would follow. [Appendix

4

62, ¶ 17 (emphasis added)] And again, SCA failed to identify its client or the original creditor. [Appendix 78]. Despite clear representations that this letter would be the final written notice, SCA *again* repeated its pattern of false and misleading collection attempts as additional debt collection notices followed. [Appendix 62, 80]

SCA proved unequivocally that its prior collection attempt was a lie when it sent *another* written notice on August 15, 2014.2 [Appendix 62, ¶ 18-19] Again, SCA failed to identify its client. [Appendix 80] This collection letter provided Appellants with "NOTICE OF LEGAL ACTION." *Id*. Inside the body of the letter, SCA placed the words "LEGAL ACTION" in all capital lettering to stand out from the remaining text. *Id*. Although SCA's letter states that the "client," who remains unidentified, must approve legal action, this hedging is buried by the capital letters and concomitant threats of judgment, garnishment, and liens. *Id*. SCA never took any legal action against Appellants. [Appendix 62, ¶ 24]

There is no dispute that SCA's November 21, 2013 letter was not a "FINAL WRITTEN NOTICE!" [Appendix 78] SCA sent other letters following that notice. There is no dispute that SCA's August 15, 2014 letter was not a "NOTICE OF LEGAL ACTION." [Appendix 80] SCA

---

2 The November 21, 2013 letter purported to be the last written notice Appellants were to receive, but this subsequent letter shows that SCA never intended the November 21, 2013 to be a final notice and only sought to coerce payment from debtors.

never sued Appellants.  There is no dispute that SCA failed to identify the original creditor in any of the letters attached to Appellants complaint.  [Appendix 73-80]  There is no dispute that SCA threatened to add an interest charge to the unpaid balance. [Appendix 74]  By using this combination of threats, coercion, and misrepresentations, SCA obtained several payments from Appellants. Finally unable to satisfy SCA's aggressive debt collection campaign, Appellants sought legal assistance and ultimately filed suit. [Appendix 15]

**PROCEDURAL HISTORY**

Appellants Robert and Mary Hill filed this complaint in the Circuit Court of Raleigh County, West Virginia, on September 9, 2014, Civil Action Number 14-C-879(H).  [Appendix 17]  As no responsive pleading had been filed, Plaintiffs amended their complaint to add Class Action allegations on November 12, 2014.  [Appendix 27] Appellee SCA Credit Services, Inc. filed a Notice of Removal pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1441, 1446 and 1453 on December 10, 2014.  [Appendix 7]  On December 11, 2014, SCA filed a Motion to Dismiss Amended Complaint. [Appendix 48]

Appellants filed their Amended Class Action Complaint on December 17, 2014, as no responsive pleading had been filed. [Appendix 60]  Appellants separately filed the Exhibits to Amended Class Action Complaint on December 18, 2014.  [Appendix 73-80]  SCA filed a Motion to Dismiss Amended Class Action Complaint on December

6

30, 2014. [Appendix 82] Appellants filed a Response on January 9, 2015 [Appendix 94], and SCA filed its Reply on January 20, 2015. [Appendix 107]

On February 3, 2015, Appellants filed a Motion for Class Certification and concurrent request to hold the motion in abeyance while the parties proceeded with discovery. [Appendix 115] Appellants filed this motion out of an abundance of caution and to prevent any attempts by SCA to buy-off the named Plaintiffs with an offer of judgment, pursuant to *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). [Appendix 116-117] SCA responded on February 12, 2015, claiming the motion was premature. [Appendix 127] Thereafter, on March 19, 2015, Appellants filed a Notice to Take Deposition of a designated representative, which outlined the issues Appellants sought in order to support the factual allegations in their Amended Class Action Complaint. [Appendix 131]

However, on April 21, 2015, the District Court entered a Memorandum Opinion and Order granting SCA's Motion to Dismiss Amended Class Action Complaint. [Appendix 137] The District Court entered a Judgment Order in favor of SCA on April 22, 2015. [Appendix 146] This appeal follows.

## SUMMARY OF ARGUMENT

SCA indisputably misled Appellants when it claimed that its November 21, 2013 letter was a "FINAL WRITTEN NOTICE!" SCA sent other letters following that notice. SCA undeniably misled

7

Appellants when it claimed that its August 15, 2014 letter was a "NOTICE OF LEGAL ACTION."   SCA never sued Appellants, and Appellants allege that SCA *never* sues debtors.   SCA indisputably threatened to add an interest charge to the Appellants' unpaid balance. Appellants sufficiently plead these facts and are entitled to pursue discovery on these issues.

The bottom line is this: It is unlawful for SCA to repeatedly lie in its collection letters.   Making baseless threats of charging interest, lying about a final chance to make payment, confusing consumers with allegations of broken promises, failing to identify the original creditor, misrepresenting consumers' ability to pay, and knowingly intimidating consumers with false threats of legal action, liens, and garnishments is completely illegal. The District Court erred when it dismissed Appellants' Amended Class Action Complaint.

## ARGUMENT

### Standard of Review

The standard of review of a Rule 12(b)(6) dismissal is *de novo.* *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). This court must construe factual allegations in the Appellants' favor and must treat them as true. *Martin Marietta Corp. v. International Telecommunications Satellite Org.,* 978 F.2d 140, 142 (4th Cir.1992). This Court cannot affirm a dismissal for failure to state a claim

8

unless it appears that "the plaintiffs would not be entitled to relief under any facts which could be proved in support of their claim." *Schatz,* 943 F.2d at 489; *Estate Const. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217-18 (4th Cir. 1994). On a motion to dismiss for failure to state a claim, the question for the Court is not whether Appellants will ultimately prevail, but whether the complaint is sufficient to cross the Federal Court's threshold. *Skinner v. Switzer*, 131 S.Ct. 1289, 562 U.S. 521, 179 L.Ed.2d 233 (2011).

In addition, all reasonable inferences must be made in favor of the Appellants. *Johnson v. Mueller,* 415 F.2d 354 (4th Cir. 1969); *MacKethan v. Peat, Marwick, Mitchell & Co.*, 439 F.Supp. 1090 (E.D.Va. 1977). Under *Ashcroft v. Iqbal*, to overcome a motion to dismiss, Appellants need only allege facts in a complaint which "'state a claim to relief that is *plausible* on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))(emphasis added). When rendering its decision, the Court should consider the allegations contained in the complaint, the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke,* 63 F.3d 1305, 1314 (4th Cir.1995); *Pennington v. Teufel*, 396 F. Supp. 2d 715, 719 (N.D.W. Va. 2005) *aff'd sub nom. Pennington v. Tuefel*, 169 F. App'x 161 (4th Cir. 2006).

As the Seventh Circuit recently stated:

> In most instances,…a proper application of the rule will require that the plaintiff be given an opportunity to demonstrate that his allegations are supported by a factual basis responsive to the statutory standard.

*McMillan v. Collection Professional, Incorporated,* 455 F.3d 754, 760 (7th Cir. 2006); *Schneider v. TSYS Total Debt Mgmt., Inc.,* No. 06-C-345, 2006 WL 1982499, at *4 (E.D. Wis. July 13, 2006)(emphasis added).

## I. COURTS CAN LOOK TO THE SIMILAR FDCPA TO ENSURE ENFORECMENT OF THE REMEDIAL PURPOSE OF THE WVCCPA.

Prohibiting lies in the collection of debt is a straightforward and fair rule. When a debt collector like SCA makes false representations or utilizes false threats to collect a debt, a violation has occurred pursuant to the West Virginia Consumer Credit and Protection Act (herein "WVCCPA").

The District Court's ruling flouts the WVCCPA's broad prohibitions of false and deceptive debt collection conduct and is entirely inconsistent with the remedial nature of the statute. Even worse, the pleading dismissal of the District Court effectively permits debt collection practices replete with dishonest and coercive conduct. There is little doubt that false and coercive practices increase profits in the debt recovery industry. Consumers receiving SCA's letters are continually misled, threatened, and coerced with respect to interest charges, liens, garnishments, ability to pay, promises made, and legal action. The WVCCPA exists to prohibit exactly this type of abusive collection conduct.

10

As the West Virginia Supreme Court of Appeals noted in *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*.:

> The purpose of the CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action... **Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.**

194 W.Va. 770, 777, 461 S.E.2d 516, 523 (emphasis added); *Harper v. Jackson Hewitt, Inc.,* 227 W.Va. 142, 151, 706 S.E.2d 63, 72 (2010)("[t]his Court has recognized that the CCPA is a remedial statute intended to protect consumers from unfair, illegal and deceptive business practices, and must be liberally construed to accomplish that purpose."); *see also Barr v. NCB Mgmt. Servs., Inc.,* 227 W.Va. 507, 513, 711 S.E.2d 577, 583 (2011)(recognizing "the remedial purposes of the WVCCPA, and the liberal construction we have historically afforded this Act"); *Fleet v. Webber Springs Owners Ass'n, Inc.*, No. 14-0637, 2015 WL 1880224, at *6 (W. Va. Apr. 23, 2015).

To help ensure this remedial purpose, the West Virginia Supreme Court of Appeals has looked to the reasoning of the federal courts interpreting the nearly identical Fair Debt Collection Practices Act when it addresses similar issues under the WVCCPA. See *Fleet v. Webber Springs Owners Ass'n, Inc.*, No. 14-0637, 2015 WL 1880224, at *7, *9 (W. Va. Apr. 23, 2015); *see also e.g. Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp.2d 495, 501 (S.D.W. Va. 2014)(finding

11

that "[g]iven the near identical language in the comparable statutes, the numerous FDCPA cases are very helpful.")  The WVCCPA further incorporates federal law by prohibiting debt collectors from making a "threat to take any action prohibited by [the WVCCPA] *or other law* regulating the debt collector's conduct."  *West Virginia Code* § 46A-2-124(f)(emphasis added).  Thus, it is appropriate for state and federal courts to review case law under the FDCPA when interpreting similar provisions of the WVCCPA.

West Virginia requires a liberal construction of the WVCCPA to protect all consumers.  So does the Fourth Circuit of the United States Courts of Appeal.  This Court has found that "[w]hether a communication is false, misleading, or deceptive in violation of [the FDCPA] is determined from the vantage of the 'least sophisticated consumer.'"  *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394 (4th Cir. 2014); *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 136 (4th Cir. 1996).  The *Russell* Court explained that "[t]he least sophisticated consumer test is an objective standard that evaluates [FDCPA] claims based upon how the least sophisticated consumer would interpret the allegedly offensive language."  763 F.3d at 395.  The use of a test evaluating the understanding of a least sophisticated consumer is intended to ensure that "the gullible as well as the shrewd" are not deceived by communications from a debt collector. *Ramsay v. Sawyer Prop. Mgmt. of Maryland LLC*, 2014 WL 6892717, at *4 (4th Cir. Dec. 9, 2014).

12

Despite the WVCCPA's remedial purpose, and despite the Fourth Circuit's 'least sophisticated consumer standard,' the District Court applied a subjective evaluation by holding that "[n]othing in the letters could be construed, even by the least sophisticated consumer, as a threat of anything more that (sic) continued lawful debt collection attempts, and of potential legal action." [Appendix 144] However, the 'least sophisticated consumer' standard is objective, not subjective. *Terran v. Kaplan,* 109 F.3d 1428, 1432 (9th Cir. 1997). It is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor," and "is designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naïve." *Gonzalez v. Arrow Financial Services, LLC,* 660 F.3d 1055, 1061 (9th Cir.) (internal citations omitted). A debtor is not required to present evidence that the least sophisticated debtor would be misled. *Gonzales v. Arrow Financial Servs., LLC,* 489 F.Supp.2d at 1149 (S.D.Cal.2007) *aff'd,* 660 F.3d 1055 (9th Cir.2011) ("The cases that have addressed whether a collection letter's language violates Section 1692e's provisions have done so without looking at extrinsic evidence ... defendant's argument that the lack of evidentiary support requires summary judgment be entered in defendant's favor is meritless.").

Debt collectors cannot evade liability simply because they communicated a misrepresentation to a consumer who was not misled.

*De Amaral v. Goldsmith & Hull*, 2014 WL 572268, at *5 (N.D. Cal. Feb. 11, 2014). When a debtor seeks statutory damages, liability does not depend on proof that the recipient of the letter was misled. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997); E.g., *Tolentino v. Friedman,* 46 F.3d 645, 651 (7th Cir.1995); *Harper v. Better Business Services, Inc.,* 961 F.2d 1561, 1563 (11th Cir.1992); *Clomon v. Jackson,* 988 F.2d 1314, 1322 (2d Cir.1993); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 780-81 (9th Cir.1982). All that is required is proof that the statute was violated. *Bartlett v. Heibl*, 128 F.3d at 499 (noting the only inquiry left within the district court's discretion to decide is how much to award); E.g., *Tolentino v. Friedman, supra,* 46 F.3d at 651; *Clomon v. Jackson, supra,* 988 F.2d at 1322.

## II. SCA VIOLATED THE WVCCPA BY MISREPRESENTING ITS DEBT COLLECTION TACTICS.

### A. SCA misrepresented to Appellants that it would take legal action when SCA never intended to take any.

*West Virginia Code* § 46A-2-124 states that "[n]o debt collector shall collect or attempt to collect any money alleged to be due and owing by means of any threat, coercion or attempt to coerce." *West Virginia Code* § 46A-2-127 states that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." These broad protections are mirrored in the

14

FDCPA, which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. 1692e(5). Further, § 1692e(10) prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt..."

Appellants plead that SCA's "NOTICE OF LEGAL ACTION" was a misleading threat because SCA never took legal action. [Appendix 80] In addition to the WVCCPA's clear language prohibiting misleading and deceptive practices, the West Virginia Supreme Court of Appeals has made it clear that false threats of legal action violate multiple provision of the WVCCPA. *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300, at *5 (W. Va. May 30, 2014) (Affirming the lower court and finding that "…false threats of legal action to consumers including threats to initiate arbitration and threats of nonjudicial seizure of property that were not intended under the law or were specifically prohibited by the law, [were] in violation of West Virginia Code § 46A-2-124, § 46A-2-127, and § 46A-6-104.")

In addition, the Fourth Circuit has found that falsely threatening legal action is a deceptive practice. See *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 137 (4th Cir. 1996). Specifically, the Fourth Circuit found that such a threat is unlawful because it conveys authority, instills fear in the debtor, and escalates the consequences. *Id*. Other courts have joined the

15

Fourth Circuit and consistently found that falsely representing that unpaid debts would be referred to an attorney for immediate legal action is a deceptive practice. *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1175 (11th Cir.1985); *Masuda v. Thomas Richards & Co.,* 759 F.Supp. 1456, 1459–61 (C.D.Cal.1991); *Trans World Accounts, Inc. v. FTC,* 594 F.2d 212, 216 (9th Cir.1979); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

Reference to legal action in a letter to a debtor is a false threat of suit where no attorney has been retained to collect a particular debt or reached any determination that a suit would be filed if payment is not made. *Masuda v. Thomas Richards & Co.,* 759 F.Supp. at 1459–61; *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d at 138-39. Where there is an obvious intention to make debtors afraid that they would be sued, which may be an effective tactic no doubt, the debt collector has violated the law. *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d at 138. The "least sophisticated consumer" would interpret this language to mean that legal action was authorized, likely, and imminent, and thus these statements are "false, deceptive, [and] misleading" within the meaning of the FDCPA. *See Trans World Accounts, Inc. v. FTC,* 594 F.2d at 216; *Bentley v. Great Lakes Collection Bureau*, 6 F.3d at 62.[3]

Other district courts struggled with false and misleading

---

3 Again, it is appropriate for this Court to look to the FDCPA to interpret similar provisions of these similar laws. *See e.g. Fleet;* No. 14-0637, 2015 WL 1880224, at *7, *9 (W. Va. Apr. 23, 2015)

16

statements in debt collection letters, just as the District Court in this matter, dismissing claims because allegedly "accepting the plaintiff's [arguments] would cast serious question on what, if anything, a creditor could say in its attempt to collect a lawful debt." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (citing District Court decision).4  The Second Circuit in *Bentley* corrected the District Court, noting "the two dunning letters contained several admittedly false statements" and that "although the [district] court felt that the language was not violative of the statute, the FDCPA specifically prohibits the threat to take any action 'that is not intended to be taken,' and the 'least sophisticated consumer' would interpret this language to mean that legal action was authorized, likely, and imminent." *Id*. (internal citations omitted).  The *Bentley* Court reiterated that The FDCPA is a strict liability statute. *Id*. at 63.

### 1. SCA's "FINAL WRITTEN NOTICE" was not a final written notice.

Just as in *Bentley*, SCA made clearly false statements in its collection letters to the Appellants.  SCA stated in one letter that it was Appellants' "FINAL WRITTEN NOTICE." [Appendix 78]  Just as in *Bentley*, this statement is indisputably false.  SCA followed this letter with additional collection letters.  This threat is misleading, as a debtor is intended to believe that escalated

---

4 In fact, the District Court below used similar language when dismissing Appellants' complaint.  [Appendix 144]

collection efforts will follow.  SCA clearly intended that a debtor would read that this was his final written notice before other, possibly involuntarily, debt collection occurs.  This threat would compel a debtor to seek ways to avoid any escalated debt collection and make a payment to the creditor.  As the Seventh Circuit noted in a similar context, "[t]he language in the collection letter appears to be cleverly drafted in order to insinuate what obviously cannot be stated directly…It is difficult to imagine what end [the collector] intended to accomplish with its statement other than the intimidation of unsophisticated consumers…" *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1258 (7th Cir. 1994)(finding reference to collector's prior work for government was impermissible under 1692e(1) when collecting credit card debt).

    While the District Court could not "conceive of any debt collection attempts that would be permitted by the [Appellants'] construction," [Appendix 144], SCA's statement that the letter was Appellants' "FINAL WRITTEN NOTICE" is clearly a misrepresentation. The Court does not need to conceive of anything:  SCA clearly misled the debtors.  *West Virginia Code* § 46A-2-127 prohibits the "use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers."  SCA told the Appellants, and all other debtors who received this pre-printed collection letter, that they would not receive any more written notices.  This was false.  SCA

18

intended the letters coerce debtors into making payments with the threat of heightened debt collection tactics. SCA intended to collect a claim or obtain information from the debtors. Appellants sufficiently plead a violation of the WVCCPA on this claim.

### 2. SCA's "NOTICE OF LEGAL ACTION" was not a notice of legal action.

Further, in a second letter, SCA lied to debtors that it was a "NOTICE OF LEGAL ACTION." [Appendix 80] The only language in the body of this letter that is emphasized in all capital letters is "LEGAL ACTION." *Id*. It is indisputable that SCA never took legal action. Discovery will allow Appellants to prove decisively whether SCA *ever* takes legal action. As stated above, this Court has found that such a threat conveys authority, instills fear in the debtor, and escalates the consequences. See *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d at 137. This Court could not have been clearer: "[w]here there is an obvious intention to make debtors afraid that they would be sued, which may be an effective tactic no doubt, the debt collector has violated the law." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d at 138. Although the District Court subjectively believed that this "NOTICE OF LEGAL ACTION" merely provided "an accurate description of the possible consequences of legal action…and is clear that the client had not yet approved legal action," [Appendix 144] it has failed to apply the plain language of the WVCCPA, much less liberally construe the WVCCPA to achieve

19

its remedial purpose. The District also failed to view the collection notices through the lens of the least sophisticated consumer. The District Court adopted a hyper-literal approach which ignores the ordinary connotations and implications of language as it is used in the real world. *See e.g. United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d at 138. A reasonable juror could conclude that those statements were meant to make debtors fear that they would be sued or face other harsh collection practices. *Id*.

SCA seems to argue that it did not threaten to sue; rather, it threatened to consider to sue. [Appendix 88] In light of the fact that no suit was ever filed [Appendix 62, ¶ 24], Appellants must be entitled to conduct discovery into whether SCA or its client ever reviewed any file for possible litigation. If not, then that threat was also false. Appellants should also be allowed time to discover SCA's true intentions by looking into whether SCA sent accounts to a lawyer, whether SCA reviewed any accounts or information in relation to any particular account with a lawyer, whether SCA had a lawyer read or review the letters or accounts prepared that threatened legal action, whether SCA maintained list of debtors who were referred to a lawyer, whether a lawyer participated in any aspect of the collection activities during the prior four years, whether SCA or its client ever paid a lawyer any money for any purpose, whether SCA made any distinction between payments received from lawsuits and payments from regular collections, whether SCA had authority in its

20

contract with its client to threaten or bring legal action, amongst other issues. See *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d at 134; *Bentley v. Great Lakes Collection Bureau*, 6 F.3d at 61. Appellants have again stated a plausible claim that should not have been dismissed by the District Court.

**B. SCA misrepresented to Appellants that it would seek legal remedies that it never intended to pursue.**

*West Virginia Code* § 46A-2-124(e) prohibits "[t]he threat that nonpayment of an alleged claim will result in the …(2) Garnishment of any wages of any person or the taking of other action requiring judicial sanction, without informing the consumer that there must be in effect a judicial order permitting such garnishment or such other action before it can be taken." The FDCPA prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. 1692e(5).

The threat of legal remedies in SCA's letters falls under the same threat of actions that are not intended to be taken. [Appendix 80] The Second Circuit has held:

> [T]he later letter's references to the various proceedings supplementary to judgment available to enforce collection (e.g., garnishment) also violated section 1692e(5)'s prohibition of threats to take action "that [are] not intended to be taken." *See id.* § 1692e(5). These references to legal remedies, when read in conjunction with the first paragraph of that letter, which advised that the account was being reviewed by [the collector] to determine "what direction must be taken to enforce collection," would mislead the least sophisticated consumer. The quoted language conveys to the consumer that [the collector] was authorized to make the decision to institute the

> legal action that could lead to the supplementary proceedings described. In the context of the letter, the threat of a lawsuit instigated by [the collector] is strengthened by the statement: "No legal action *has been* or *is now being* taken against you." (emphasis added). In fact, [the original creditor] retained the authority to decide whether legal proceedings of any kind would be instituted, and the likelihood of such proceedings on a claim for $483.43 was almost nonexistent. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993)

Appellants alleged that SCA never intended to file a lawsuit, yet nonetheless threatened to garnish wages and conduct additional post-judgment collection activities. Appellants further alleged that SCA never filed suit, and through discovery, Appellants will establish that SCA never files *any* lawsuits. While the District Court only saw "an accurate description of the possible consequences of legal action," [Appendix 144] the least sophisticated consumer would believe that a garnishment was imminent. SCA's mention of garnishment and lien placements conveys to the Appellants that SCA was authorized to institute the legal proceedings described. But Appellants intend to show that SCA not only did not take legal action, but also never intended to take legal action. Appellants can prove that the threat of garnishment and liens is designed to coerce a debtor to find some money to pay SCA or else face the prospect of the money being withheld forcibly from them. Thus, the threat of post-judgment collection activities violates the WVCCPA's prohibition on the threat to take any action prohibited by this chapter or other law regulating the debt collector's conduct. *West Virginia Code* § 46A-2-124(f). Appellants properly plead this cause

22

of action and are entitled to discovery to prove their claim.

### C. SCA threatened abusive and harsh future debt collection.

*West Virginia Code* § 46A-2-124(d) prohibits "[t]he threat to sell or assign to another the obligation of the consumer with an attending representation or implication that the result of such sale or assignment would be that the consumer would…be subjected to harsh, vindictive or abusive collection attempts." In a collection letter, SCA stated: "[w]e feel that we have done everything we can do to work with you in a friendly manner…Now, unless we receive payment immediately, we will have to proceed with further collection action against you." [Appendix 76] Appellants alleged that this violation placed them in fear of harsh, vindictive, or abusive collection attempts. [Appendix 61, ¶ 12]

Despite the Appellants plausibly plead claim, the District Court adopted a hyper-literal approach which ignored the ordinary connotations and implications of language as it is used in the real world. *See e.g. United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d at 138. A reasonable juror could conclude that those statements were meant to make debtors fear that they would be sued or face other harsh collection practices. *Id.* Otherwise, SCA would not have used the words "friendly manner" followed by the ominous language "[n]ow, unless we receive payment immediately, we will have to proceed with further collection action…" [Appendix 76] SCA intended to invoke

23

a fear that harsher collection action would follow, which is a violation of the plain language of the WVCCPA.  The Seventh Circuit found that a consumer had stated a claim when "[t]he language in the collection letter appears to be cleverly drafted in order to insinuate what obviously cannot be stated directly." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d at 1258 (finding "[i]t is difficult to imagine what end [the collector] intended to accomplish with its statement other than the intimidation of unsophisticated consumers…").  Appellants should be allowed to proceed on this claim.

> **D.  SCA deceptively withheld the name of the original creditor from debtors.**

*West Virginia Code* § 46A-2-127 states that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers."  Similarly, 15 U.S.C. § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  It should also be noted that W. Va. Code §46A-2-127 is specifically a non-limiting statute pointing out that, "**[w]ithout limiting the general application of the foregoing**, the following conduct is deemed to violate this section." W. Va. Code §46A-2-127 (emphasis added).  Although *West Virginia Code* § 46A-2-127(c) prohibits "[t]he failure to clearly disclose the name and full

business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money," this is only a subsection of the statute and does not limit the general application of the rule prohibiting deceptive means to collect a debt or obtain information. Along these lines, 15 U.S.C. § 1692g(a)(2) requires debt collectors to disclose "[t]he name of the creditor to whom the debt is owed."

Just as the WVCCPA subsections do not limit the general applicability of the general rule, the sixteen subsections of section 1692e provide a nonexhaustive list of practices that fall within the FDCPA's ban. A debt collection practice may violate the FDCPA even if it does not fall within any of the subsections, *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993), and a single violation of section 1692e is sufficient to establish civil liability under the FDCPA, *see* 15 U.S.C. § 1692k. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

A debt collector must disclose to whom the money is owed when collecting. "To preserve the protections and policies of the FDCPA, it is important to know the proper identity of the creditor. Knowing a creditor's identity allows the 'least sophisticated consumer' to make more informed decisions on how to communicate with the creditor and avoid being misled." *Isham v. Gurstel, Staloch & Chargo, P.A.,* 738 F.Supp.2d 986, 996 (D.Ariz.2010); *Tourgeman v. Collins Fin. Servs., Inc.,* No. 08-CV-1392 JLS NLS, 2011 WL 3176453, at *5-6 (S.D.

Cal. July 26, 2011) (finding "the Court can conceive of nary a situation more confusing than receiving a dunning letter identifying an original creditor to whom the consumer never was indebted.") Here, SCA failed to disclose the name of the original creditor. [Appendix 61-62]  Instead, SCA would rather demand consumers pay money to a mystery creditor for an unidentified alleged debt.  This is contrary to the WVCCPA, FDCPA, and the common law. See *e.g. Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 327 (6th Cir. 2012)(finding the inquiry is whether " a statement would tend to mislead or confuse the reasonable unsophisticated consumer.")

Even though the Court could find that SCA complied with *West Virginia Code* § 46A-2-127(c), § 127 generally is not limited by the application of specific subparts.  The WVCCPA is designed to protect the least sophisticated consumers from unfair and deceptive business practices.  A consumer must know where his payments are going.  Otherwise, a consumer could not be assured that his accounts that are legitimately due were being paid.  When a debtor makes a payment, he needs to be assured that the payment is for a legitimate debt.  The District Court's ruling constrains the broad consumer protections afforded in the WVCCPA and is contrary to the remedial nature of this law.

### E.  SCA threatened to charge illegal fees.

*West Virginia Code* § 46A-2-128(d) prohibits "[t]he collection of or the attempt to collect any interest or other charge, fee or

26

expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating or modifying the obligation and by statute or regulation." Additionally, *West Virginia Code* § 46A-2-127(g) prohibits "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation." *See also CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300, at *5 (W. Va. May 30, 2014) cert. denied sub nom. *CashCall, Inc. v. Morrissey*, 135 S. Ct. 2050 (2015).

Similarly, 15 U.S.C. § 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

In its February 6, 2013 collection letter, SCA plainly states: "[a]t the request of our client we are preparing to assess an interest charge to the unpaid balance." [Appendix 74] The WVCCPA prohibits SCA from representing that the Appellants' obligation could be increased by any interest charge or attempting to collect such an interest charge.  This is a blatant violation of the plain language of the WVCCPA.  Charging interest compels debtors to pay off balances as quickly as possible in order to save money in monthly additions

27

to the principal balance.  SCA is not entitled to charge interest to Appellants' or any other West Virginia residents' account under the WVCCPA.  SCA's threat to apply an interest charge flaunts state and federal consumer protections.  There is no justification for this unlawful lie.  Appellants stated a plausible claim for recovery on this ground, and this claim must be allowed to proceed before the District Court.

**CONCLUSION**

The District Court's dismissal was improvident, and therefore, this Court must reverse the District Court's order remand this matter for further proceedings.

Robert Hill and Mary Hill, Individually and on behalf of all Others Similarly Situated

BY COUNSEL

/s/ Jed R. Nolan
Ralph C. Young (WVSB#4176)     Troy N. Giatras (WVSB#5602)
Jed R. Nolan (WVSB#10833)      The Giatras Law Firm, PLLC
Hamilton, Burgess, Young       118 Capitol Street, Suite 400
& Pollard, PLLC                Charleston, WV 25301
PO Box 959                     304-343-2900
Fayetteville, WV 25840
304-574-2727

## <u>CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND</u>
## <u>LENGTH LIMITATIONS</u>

The undersigned counsel hereby certifies that this brief complies with Fed. R. App. 28.1(e)(2) and Fed. R. App. P 32(a)(5)(B).

This brief has been prepared in Microsoft Word, Courier New Font, 12 point, and contains 6723 words (683 lines).

This 15th day of July 2015.


<u>/s/ Jed R. Nolan</u>
Ralph C. Young (WVSB#4176)
Jed R. Nolan (WVSB#10833)
Hamilton, Burgess, Young
& Pollard, PLLC
PO Box 959
Fayetteville, WV 25840
304-574-2727

Troy N. Giatras (WVSB#5602)
The Giatras Law Firm, PLLC
118 Capitol Street, Suite 400
Charleston, WV 25301
304-343-2900

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, counsel of record for Appellants, does hereby certify on this 15TH day of July, 2015, that a true copy of the foregoing **Opening Brief of Appellants** was filed with the Clerk of the Court via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to the following CM/ECF participants:

      John T. Jessee
      Paul C. Kuhnel
      Kevin P. Oddo
      Joseph M. Rainsbury
      LeClair Ryan,PC
      1800 Wells Fargo Tower
      10 South Jefferson Street
      Roanoke, VA 24011
      Counsel for Appellee


/s/ Jed R. Nolan
Ralph C. Young (WVSB#4176)
Jed R. Nolan (WVSB#10833)
Hamilton, Burgess, Young
& Pollard, PLLC
PO Box 959
Fayetteville, WV 25840
304-574-2727

Troy N. Giatras (WVSB#5602)
The Giatras Law Firm, PLLC
118 Capitol Street, Suite 400
Charleston, WV 25301
304-343-2900