**RECORD NO. 15-1554**

IN THE

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

ROBERT HILL, MARY HILL, his wife, Individually
and on behalf of all others similarly situated

*Plaintiffs-Appellants*

v.

SCA CREDIT SERVICES, INC.

*Defendant-Appellee*

On appeal from the United States District Court
for the Southern District of West Virginia

**BRIEF OF APPELLEE**

Paul C. Kuhnel (Va. Bar #28151)
Kevin P. Oddo (Va. Bar #27503)
John T. Jessee (Va. Bar #18745)
Joseph M. Rainsbury (Va. Bar #45782)
LeClairRyan, a Professional Corporation
1800 Wells Fargo Tower
Suite 1200
Roanoke, Virginia 24006
Telephone: (540) 510-3020
Facsimile: (540) 510-3050
paul.kuhnel@leclairryan.com
kevin.oddo@leclairryan.com
john.jessee@leclairryan.com
joseph.rainsbury@leclairryan.com
*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1554__    Caption: __Hill v. SCA Credit Services, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__SCA Credit Services, Inc.__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
       Carilion Clinic

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Kevin P. Oddo                          Date:    May 28, 2015

Counsel for: SCA Credit Services, Inc.

## CERTIFICATE OF SERVICE
****************************
I certify that on    May 28, 2015    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Kevin P. Oddo                                   May 28, 2015
        (signature)                                        (date)

- 2 -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. ii

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES........................................................... 3

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............ 4

    Statement of Alleged Facts ....................................................... 4

    Course of Proceedings and Disposition Below....................... 6

SUMMARY OF THE ARGUMENT ..................................................... 9

ARGUMENT ......................................................................................... 10

    I.    Standard of Review ..................................................... 10

    II.    The Hills waived their claim that SCA
           threatened to charge interest. ................................... 11

    III.    The District Court's order should be affirmed
           because the Amended Complaint fails to state
           a claim. ........................................................................... 12

           A.    The WVCCPA does not require debt-collection
                 letters to disclose the identity of the original
                 creditor. .............................................................. 13

           B.    The letters do not threaten abusive and harsh
                 future debt collection. .................................... 16

           C.    SCA did not illegally threaten to garnish the
                 Hills' wages. .................................................... 17

           D.    The Amended Complaint does not state a claim
                 regarding the "Final Written Notice!" letter. ............. 20

           E.    The "Notice of Legal Action" letter accurately
                 describes the consequences of legal action, and
                 plainly states that such action had yet to be
                 approved. ............................................................ 22

CONCLUSION.................................................................................... 25

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)................ 27

CERTIFICATE OF SERVICE ........................................................... 28

i

# TABLE OF AUTHORITIES

**Cases**

*Adams v. J.C. Christensen & Associates, Inc.*, 777 F. Supp. 2d 1193 (D. Minn. 2011) .............................................. 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................... 11

*Bourne v. Mapother & Mapother, P.S.C.*, 998 F.Supp.2d 495 (S.D. W. Va. 2014)....................................................................... 12

*Brown v. American Broadcasting Co., Inc.*, 704 F.2d 1296 (4th Cir. 1982)...................................................................... 12, 20, 23

*Elyazidi v. SunTrust Bank*, 780 F.3d 227 (4th Cir. 2015)............. 10

*Lorandeau v. Capital Collection Serv.*, Case No. 10-3807, 2011 WL 4018248 (E.D. Pa. Sept. 8, 2011) ................................. 21

*Sigmon Coal Co., Inc. v. Apfel*, 226 F.3d 291 (4th Cir. 2000)........ 15

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516 (W. Va. 1995) ...................................................... 15

*United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131 (4th Cir. 1996)............................................................................. 23, 24, 25

*Walters v. McMahen*, 684 F.3d 435 (4th Cir. 2012) ....................... 11

**Statutes**

15 U.S.C. § 1692e ...................................................................... 23, 24

West Virginia Code § 46A-2-124 ........................................... passim

West Virginia Code § 46A-2-127 ............................................... 5, 13

West Virginia Code § 46A-2-128 ....................................................... 5

# PRELIMINARY STATEMENT

This is an action under the West Virginia Consumer Credit and Protection Act ("WVCCPA"). Over the course of a year and a half, Defendant-Appellee SCA Credit Services, Inc. ("SCA") sent Plaintiffs-Appellants Robert and Mary Hill ("the Hills") five letters to collect an outstanding debt. The letters were truthful, were worded in matter-of-fact language, and accurately recited the steps that SCA and its client lawfully could take to collect the unpaid balance.

Rather than repay their obligation, however, the Hills brought the present WVCCPA claim, alleging that the collection letters were "deceptive," "abusive," "harsh," and "misleading." The letters' actual contents belie these conclusory assertions, revealing the correspondence to be harmless and run-of-the-mill collection efforts. As the District Court found, "these letters do not approach, much less cross, any of the 'lines' in the WVCCPA designed to prevent debt collectors from engaging in misconduct." The letters could not be "construed, even by the least sophisticated consumer, as a threat of anything more than continued lawful debt collection attempts, and of potential legal action."

On appeal, the Hills take various tacks in their attempt to portray the letters as unlawful.  First, they raise theories and arguments that were neither stated in their complaint nor developed in argument below.  Second, the Hills attempt to rewrite portions of the WVCCPA— e.g., changing an "or" to an "and"—based on vague notions of the overall aims of the statute.  Third, they completely ignore statutory provisions that impose prerequisites that the Hills cannot satisfy.  Finally, the Hills cherry-pick isolated language from the letters' headings while ignoring the unambiguous content of the body text.  This Court should reject these improper arguments, should find that the letters do not violate the WVCCPA, and should affirm the decision below.

# STATEMENT OF THE ISSUES[1]

1.  Whether a party can make new factual allegations and present new legal arguments on appeal.

2.  Whether the WVCCPA requires a debt collector to disclose the name and address of *both* the debt collector and the original creditor where the plain language of the statute, worded disjunctively, only requires a debt collector to disclose this information for one or the other.

3.  Whether a debt-collection letter that neither threatens assignment to a third party nor suggests that harsh and abusive treatment will follow violates the WVCCPA's prohibition on threats to assign a claim to a third party that carry the suggestion of future harsh and abusive collection efforts.

4.  Whether a debt collection letter that clearly informs a debtor that a judgment must be in place before any garnishment can occur violates the WVCCPA's prohibition on garnishment threats that do not inform the consumer that a judicial order is a prerequisite for garnishment.

5.  Whether a "Final Notice!" caption is deceptive where the accompanying text clearly and accurately states that the letter is the final written notice until the debt-collector undertakes further collection efforts.

6.  Whether a "Notice of Legal Action" caption is deceptive where the accompanying text clearly and accurately states the legal steps that the debt-collector *may* take if the debtor fails to repay the obligation.

---

[1] Appellants fail to include a statement of issues in their opening brief. The material following their heading "Statement of Issues" is merely a general statement of the nature of this case.

# STATEMENT OF FACTS AND PROCEDURAL HISTORY

## *Statement of Alleged Facts*

In this action, the Hills allege that SCA sent them five debt-collection letters.  The first letter stated that the Hills had a balance due and that they needed to pay it to avoid further collection activities. (JA 74).  The second and third letters[2] stated that the Hills had not followed through on their promise to repay the obligation, and that SCA would proceed with further collection actions unless the Hills repaid the balance immediately.  (JA 76).  The fourth letter, captioned "Final Written Notice!" noted that—despite SCA's repeated attempts to contact them—the Hills had not repaid their balance and that "further collection action may be necessary to collect this debt."  (JA 78).  The last letter, captioned "Notice of Legal Action" apprised the Hills that "if the client approves legal action," a judgment might be entered against them and that this judgment, once obtained, could be enforced through garnishment of wages or a lien on real estate.  (JA 80).

---

[2] The same letter was mailed twice.

The Amended Complaint alleges—without elaboration—that these letters violated the WVCCPA.  Suing on their own behalf and on behalf of a putative class, the Hills seek damages and statutory penalties for SCA's allegedly unfair debt-collection practices.

In their argument to the District Court, the Hills identified six purported violations in the letters: (1) they did not identify the original creditor for whom SCA was collecting, (2) they failed to disclose the name and address of SCA's client, (3) they used language that caused them to fear that harsh, vindictive or abusive collection attempts would follow, (4) they threatened garnishments and liens, (5) they did not contain a debt validation notice, and (6) they referenced legal action when none was actually taken.  (JA 61-62).

Labeling their claims as "First" through "Fifth" causes of action, the Hills assert that the letters constituted: (a) the utilization of fraudulent, deceptive or misleading representations or means in an attempt to collect a debt in violation of West Virginia Code § 46A-2-127, (b) the use of unfair or unconscionable means to collect a debt in violation of West Virginia Code § 46A-2-128, (c) an attempt to collect a debt by coercion in violation of West Virginia Code § 46A-2-124, (d) a

"miscellaneous" violation of the WVCCPA, and (e) a common-law claim for invasion of privacy.  (JA 65-68).  All of these claims assert violations of West Virginia, not federal, law.

<em>Course of Proceedings and Disposition Below</em>

The Hills commenced this action in the Circuit Court of Raleigh County, West Virginia on September 9, 2014.  (JA 18).  They amended their complaint in state court on November 12, 2014, asserting for the first time that they were bringing this action on behalf of a class as well as on their own behalf.  (JA 27).  The class allegations provided a basis for federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), so SCA timely removed the case to the United States District Court for the Southern District of West Virginia on December 10, 2014. (JA 7).  SCA then moved to dismiss.  (JA 48).

Shortly thereafter, the Hills filed an Amended Class Action Complaint (the "Amended Complaint").  (JA 60).[3]  SCA again moved to dismiss.  (JA 82).  After the parties briefed the issues (JA 84, 94, 107),

---

[3] All Complaints filed by the Hills included as exhibits the letters that allegedly violated the WVCCPA.

6

the District Court granted SCA's motion and dismissed the case. (JA 137).

In its opinion, the District Court first rejected the Hills' procedural argument that the Motion to Dismiss could not be considered before the parties conducted class-certification discovery. (JA 142). The District Court acknowledged that class-certification discovery is required before determining whether to certify a class, but held that it is not required before ruling on a motion to dismiss. (JA 142).[4]

In addressing the substantive issues, the District Court considered both the Amended Complaint and the letters that the Hills had attached to it. It held that nothing in those letters violated either the general or the specific provisions of the WVCCPA. (JA 143). To begin with, the District Court ruled that the WVCCPA required disclosure of *either* the owner or the collector of the debt, but not both. Because SCA's name, address, phone number and web site address

---

[4] The Hills have abandoned this argument on appeal.

appear on the face of each letter, there was no violation of the WVCCPA. (JA 143-44).

The District Court also held that nothing in the letters could be construed as a threat of anything more than continued lawful debt-collection attempts, and of potential legal action. (JA 144). The letters, it noted, accurately described the possible consequences of legal action, and made it clear that SCA's client had not yet approved legal action against the Hills. (JA 144). While acknowledging that receiving debt collection letters is unpleasant, the District Court held that nothing in the letters approached—much less crossed—the lines drawn by the WVCCPA to combat debt-collector misconduct. (JA 144). Indeed, the District Court opined that it would be difficult to conceive of any debt collection letter that would pass muster under the Hills' arguments. (JA 144).

On April 22, 2015, the District Court entered an order dismissing the case with prejudice.[5] (JA 146). This appeal followed.

---

[5] As noted above, the Amended Complaint also had claims for a miscellaneous violation of the WVCCPA and invasion of privacy. This Hills have not appealed the District Court's dismissal of those claims.

## SUMMARY OF THE ARGUMENT

The District Court properly dismissed the Amended Complaint because it failed to allege a plausible claim under the WVCCPA.

Contrary to the Hills' argument, the District Court made no factual findings in dismissing the Amended Complaint. The District Court accepted the only material factual allegation made by the Hills— that SCA sent the letters to them. It did not, however, accept the Hills' characterization of those letters. It did not accept their legal conclusion that the letters violated the WVCCPA. And it did not accept the Hills' interpretation of the relevant provisions of the WVCCPA. This was proper. Whether the letters contained language prohibited by the WVCCPA was a question of law for the District Court to resolve.

Because the letters were attached to the Amended Complaint, the District Court considered them in deciding whether they violated the WVCCPA. In analyzing the issues, the Court read the letters, applied the relevant statutes, and reached the correct legal conclusion that the letters complied with the WVCCPA.

On appeal, the Hills raise new arguments regarding the threat to impose interest.  These arguments are procedurally barred, as this Court will not consider arguments made for the first time on appeal.

As for the arguments that *were* raised below, these fail for the reasons the District Court stated.  The claim that SCA needed to identify both the debt-collector and the original creditor fails because the statute requires parties only to identify one or the other, not both. The argument that the letters illegally threaten garnishment fails because the statute allows such warnings where, as here, they are accompanied by a statement informing the debtor that a judicial order must be in place before wages can be garnished.  And the Hills' various arguments that the letters were abusive and misleading fail because the letters accurately notified the Hills of what further collection actions could be taken if they failed to repay their obligation.

For all these reasons, amplified below, this Court should affirm.

## ARGUMENT

## I.    Standard of Review

This Court reviews a district court's grant of a motion to dismiss *de novo.  Elyazidi v. SunTrust Bank*, 780 F.3d 227, 233 (4th Cir. 2015). In ruling on a motion to dismiss, the Court accepts as true the facts

alleged in the complaint, but not the legal conclusions. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "'labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S. at 557).

## II.    The Hills waived their claim that SCA threatened to charge interest.

In their opening brief, the Hills argue that SCA's February 13, 2013 letter violates the WVCCPA because it threatens to charge interest. (Br. at 26-28). This claim has been waived because the Hills never raised it in their Amended Complaint and did not develop it in their arguments below. Parties may not assert new legal claims for the first time on appeal. *See, e.g.*, *Brown v. American Broadcasting Co.,*

*Inc.,* 704 F.2d 1296, 1303 (4th Cir. 1982) (noting that a party "cannot raise a new claim for the first time on appeal.").[6]

The Amended Complaint does not contend that any SCA letter violates the WVCCPA because of a threat to charge unauthorized interest. Indeed, the Amended Complaint never even mentions such a threat. Nor, for that matter, did the Hills ever seek to add a claim that SCA wrongfully threatened to charge interest. Because it is too late now for the Hills to add new theories of relief, this Court should summarily reject their arguments regarding SCA's threats to charge interest.

### III. The District Court's order should be affirmed because the Amended Complaint fails to state a claim.

The Hills' Amended Complaint asserts that the letters sent by SCA were false and misleading. But saying this does not make it so.

---

[6] Similarly, the Hills repeatedly cite to provisions of the FDCPA and argue that SCA violated those provisions. But the Complaint never alleges a claim for violation of the FDCPA. Therefore, to the extent the Hills now claim such violations, they cannot be considered by this Court. While cases construing the FDCPA may be "helpful" in interpreting the WVCCPA, see *Bourne v. Mapother & Mapother, P.S.C.*, 998 F.Supp.2d 495, 501 (S.D.W.Va. 2014), asserting a claim under the WVCCPA does not and cannot constitute a claim under the FDCPA.

12

This Court, like the District Court, must read the letters and compare them with the WVCCPA—and *only* the WVCCPA—and determine if the allegations support the Amended Complaint's legal theories.  As shown below, they do not.

### A. The WVCCPA does not require debt-collection letters to disclose the identity of the original creditor.

The Amended Complaint asserts that SCA violated the WVCCPA by failing to disclose the identity of the original creditor to whom they were indebted.  (JA 65).  The District Court rejected this argument, holding that the WVCCPA (§ 46A-2-127(c)) requires only the disclosure of *either* the creditor or the debt collector.  (JA 143-44).  This follows from a straightforward reading of the statutory language, worded in the disjunctive, which penalizes the following:

> The failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, ***or*** to whom the claim is owed, at the time of making any demand for money . . . .

W. Va. Code § 46A-2-127 (emphasis added).  In the present case, the letters disclosed the name, address, phone number, and website address of the debt collector (SCA).  Thus, the letters did not violate § 46A-2-127(c).  (JA 144).

13

On appeal, the Hills concede the correctness of the District Court's interpretation, stating that "the Court could find that SCA complied with West Virginia Code § 46A-2-127(c)." (Br. at 26). They proceed, however, to make an argument—*never* made below—that even though SCA complied with the specific statutory provision, "broad[er] consumer protections" require that the District Court's judgment be reversed. (Br. at 26). Thus, the Hills invite this Court to ignore the specific statutory language of the WVCCPA (which they concede SCA complied with) and hold SCA liable for violating some unwritten policy purportedly underlying the statute.

This Court should decline the invitation. To begin with, this Court generally does not address arguments made for the first time on appeal. *Helton v. AT&T, Inc.*, 709 F.3d 343, 360 (4th Cir. 2013) (an issue raised for the first time on appeal generally will not be considered absent a showing that refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice). So it should not even consider the merits of the Hills' untimely "broader consumer protections" argument.

More to the point, the Hills' argument contradicts the text of the statute. The West Virginia legislature addressed the specific issue of who needed to be identified in a debt-collection demand and—by their choice of "or"—determined that a demand need only state information about *either* the original creditor or the party collecting the debt. The Hills' interpretation, however, would require information about both of these entities, changing the "or" to an "and." But a court cannot rewrite a statute's text to make it conform to what the court deems to be its spirit. *See, e.g.*, *Sigmon Coal Co., Inc. v. Apfel*, 226 F.3d 291, 305 (4th Cir. 2000) *aff'd sub nom. Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002) ("[W]hen the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it."); *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va. 1995) ("Courts are not free to read into the language what is not there, but rather should apply the statute as written."). Thus, this Court should reject the Hills' argument that it should rewrite the statute based on nebulous

notions of the "broad consumer protections" and "remedial nature" of the law.[7]

### B. The letters do not threaten abusive and harsh future debt collection.

The Hills also argue that the Amended Complaint states a claim under West Virginia Code § 46A-2-124(d). This section makes it unlawful to:

> *threat[en] to sell or assign* to another the obligation of the consumer with an attending representation or implication that the result of such sale or assignment would be that the consumer . . . would be subjected to *harsh, vindictive or abusive* collection attempts.

(*Id.*) (emphasis added). The Hills argue that SCA violated this statute by including in a letter the following language: "We feel that we have done everything we can do to work with you in a friendly manner . . . . Now, unless we receive payment immediately, we will have to proceed with further collection against you." (Br. at 23). They

---

[7] The Hills cite 15 U.S.C. § 1692g(a)(2) for the proposition that the *federal* FDCPA requires disclosure of "[t]he name of the creditor to whom the debt is owed." (Br. at 25.) But the Hills have not sued under the federal act. They sued under the West Virginia act. And the plain language of the West Virginia act requires only the disclosure of either the creditor or the debt collector. Accordingly, the federal statute and cases that the Hills rely on are inapposite.

16

say that this language was intended to "invoke a fear that harsher collection action would follow." (Br. at 23-24).

There are two flaws in this argument. First, § 46A-2-124(d) applies only in the context of a "threat to sell or assign to another the obligation of the consumer." The above-quoted language from SCA's letter is not a threat to sell or assign the obligation; it is a statement that SCA itself would undertake further collection efforts. Nor do the Hills otherwise allege a threat to sell or assign the obligation. Thus, by its plain terms, § 46A-2-124(d) does not apply.

Second, the letter contains no threat of "harsh, vindictive, or abusive collection attempts." It simply states that if payment is not received promptly, further collection attempts would follow. For both of these reasons, this Court should affirm the District Court's ruling that the Amended Complaint fails to state a claim under § 46A-2-124(d).

### C. SCA did not illegally threaten to garnish the Hills' wages.

The Hills argue that the Amended Complaint states a claim under §46A-2-124(e) because, they assert, the letters illegally threaten to garnish their wages. (Br. at 21). Once again, the Hills ignore key language in the provision of the WVCCPA on which they rely. Contrary

17

to the Hills' suggestion, § 46A-2-124(e)(2) does not ban all warnings that wages might be garnished. Rather, it makes such warnings unlawful only if they do not concurrently inform the consumer that, for garnishment to occur, there must be a judicial order in place. Thus, it prohibits:

> The threat that nonpayment of an alleged claim will result in the
>
> . . .
>
> (2)   Garnishment of any wages of any person or the taking of other action requiring judicial sanction, *without informing the consumer that there must be in effect a judicial order permitting such garnishment or such other action before it can be taken . . . .*

W. Va. Code § 46A-2-124(e) (emphasis added). In other words, § 46A-2-124(e) permits warnings of garnishment if the debt collector tells the consumer that there must first be a judicial order in place.

The letter at issue complies with the statute. It properly informs the Hills of the steps—including obtaining a judgment—that SCA must take before it can garnish their wages:

> If the client approves legal action, it may result in a judgement [sic] being granted against you, which could be recorded, once obtained, on your credit history. In addition, our client could

18

> enforce a judgement [sic] through a garnishment
> of your wages or lien against real estate.

(JA 80). This is not a naked threat of garnishment of the kind that § 46A-2-124(e)(2) prohibits. Instead, it informs the Hills "that there must be in effect a judicial order permitting such garnishment or such other action before it can be taken." More precisely, the letter states that there *could* be legal action that *could* result in a judgment against the Hills, and that that judgment *could* be enforced through a garnishment of wages. Stating the possibility of future legal action—and the steps necessary to obtain a judgment and execute on it—does not violate the statute. Accordingly, the Amended Complaint fails to state a claim under § 46A-2-124(e)(2).

On appeal, however, the Hills attempt to recast their § 46A-2-124(e)(2) argument. Their brief states—incorrectly—that they "alleged that SCA never intended to file a lawsuit, yet nonetheless threatened to garnish wages and conduct additional post-judgment collection activities." (Br. at 22). This argument fails for two reasons.

First, the Amended Complaint does *not* allege this theory of relief. There is no allegation that SCA made an insincere threat of legal action. Paragraph 22 simply states that "SCA threatens to garnish

Plaintiffs' wages and place a lien against Plaintiffs' real estate." (JA 62.) It does not say that SCA had no intent to do so. Neither does the Third Cause of Action—the place in the Amended Complaint that actually cites §46A-2-124(e). Because this Court does not consider new claims for the first time on appeal, the Hills' new-found theory must be rejected. *Brown*, 704 F.2d at 1303.

Second, as already explained, SCA complied with the requirements of the WVCCPA with regard to wage garnishments. It informed the Hills that—before garnishment could occur—there must be a judgment in place. SCA cannot be liable for complying with the statute. Accordingly, this Court should reject the Hills' argument that SCA illegally threatened them with garnishment.

### D. The Amended Complaint does not state a claim regarding the "Final Written Notice!" letter.

The Hills also claim that the "Final Written Notice" letter was false and misleading because it was not, in fact, SCA's final correspondence with them. This argument misconstrues the meaning of this heading and ignores the plain import of the body text.

When evaluating whether a debt-collection letter is false or misleading, courts cannot take isolated phrases out of context; they must read the letter as a whole. *See, e.g.*, *Adams v. J.C. Christensen & Associates, Inc.*, 777 F. Supp. 2d 1193, 1196 (D. Minn. 2011) ("Language in a debt-collection letter cannot be viewed in isolation; the letter must be viewed 'as a whole' to determine whether it runs afoul of the FDCPA."); *Lorandeau v. Capital Collection Serv.*, Case No. 10-3807, 2011 WL 4018248, at *5, *10 (E.D. Pa. Sept. 8, 2011) (holding that one must examine whether—after reading letter—a significant portion of the population would be misled and opining that in context of letter "FINAL NOTICE" language did not create false sense of urgency), *disagreed with on unrelated grounds*, *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir. 2014) *cert. denied*, 135 S. Ct. 487, 190 L. Ed. 2d 360 (2014).

Viewed as a whole, there is nothing false or misleading about the content of the "Final Written Notice" letter. The letter clearly states that SCA has made "repeated attempts to contact" the debtor and that "additional collection action may be necessary" to collect the debt. (JA 78). If the debtor wants to avoid these additional collection efforts, SCA

"must receive payment in full on the account." (JA 78). In this context, the caption "Final Written Notice!" means merely that it is the last written notice that the debtor will receive before additional collection action occurs. In particular, the letter does *not* say that the "additional collection actions" will not include written notices. Nor does it threaten imminent legal action.

Read as a whole, there is nothing false or misleading about the letter. This Court should affirm the District Court's dismissal of this claim.

### E.    The "Notice of Legal Action" letter accurately describes the consequences of legal action, and plainly states that such action had yet to be approved.

The Hills likewise assert that the "Notice of Legal Action" letter was illegal because its caption suggests that legal action was being taken, yet the body of the letter said that any such action was contingent on approval by the creditor. (JA 62). Like the Hills' other points, their arguments about this letter have morphed significantly on appeal. In their opening brief, the Hills now contend that the "Notice of Legal Action" letter violated both § 46A-2-124 and § 46A-2-127 because it misrepresented "legal action SCA never intended to take." (Br. at 14).

This argument fails both procedurally and substantively. Procedurally, it fails because—contrary to their argument to this Court—the Amended Complaint does not allege that SCA "never intended" "to take legal action." The Hills cannot make new factual allegations on appeal that did not appear in their Amended Complaint. *Brown*, 704 F.2d at 1303.

Substantively, it fails because SCA's statements are not actionable under the WVCCPA. As the District Court noted, "Nothing in the letters could be construed . . . as a threat of anything more than the continued lawful debt-collection attempts, and of potential legal action." (JA 144). Moreover, this letter simply "provides an accurate description of the possible consequences of legal action, in compliance with W. Va. Code Section 46A-2-124, and it is clear that the client had not yet approved legal action against the Hills." (JA 144).

Citing cases decided under § 1692e(5) of the federal FDCPA, however, the Hills claim that the "Notice of Legal Action" was a false and deceptive threat of legal action. (Br. at 15) (citing *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 137 (4th Cir. 1996)). There are several problems with this argument. To begin with, the Hills brought

this action under the WVCCPA, not the federal FDCPA. The WVCCPA lacks a provision corresponding to § 1692e(5) of the FDCPA. So the cases applying that provision have no bearing on the present case.

Yet even assuming that the cases interpreting § 1692e(5) of the FDCPA were relevant to this case—and they are not—the Hills' argument still fails. To establish a claim under § 1692e(5), a plaintiff must show: (1) that the debtor reasonably believes legal action was threatened, and (2) that the debt collector does not intend to take such action. *Nat'l Fin. Servs.*, 98 F.3d at 135. The Hills' Amended Complaint fails to allege facts establishing either requirement.

Not even the least sophisticated consumer could believe that the letter threatens legal action. The letter does *not* say that legal action has been initiated—or even would be initiated—if the debtor refuses to pay what is owed. (JA 42). Rather, it simply notes that (1) SCA's client has, in the past, undertaken legal action to collect debts, (2) *if* SCA's client approves of legal action against the Hills, the result may be a judgment entered against them, and (3) "to avoid possible legal action," the Hills must pay the amount due. These hypothetical, qualified, and

contingent assertions would not cause even the least-sophisticated consumer to believe that there was a threat of imminent legal action.[8]

Moreover, there is no allegation that SCA did not mean what it said. As noted above, the Amended Complaint does not allege that SCA never intended to act in accordance with the steps outlined in this letter. It just alleges that legal action was never actually taken against the Hills. (JA 29) But the fact that this legal action did not occur does not belie the statements in the letter. Among other things, the client may not have approved legal action—a contingency clearly outlined in the letter. Accordingly, this Court should reject the Hills' argument that the letter was deceptive.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be affirmed.

SCA Credit Services, Inc.

---

[8] The statement in *United States v. Nat'l Fin. Services, Inc.*, by contrast, was an unqualified threat that unless the debtor paid within a certain period, the case would be sent to an attorney (with the implication that suit would be filed). 98 F.3d at 136.

By:  Joseph M. Rainsbury
Counsel

Paul C. Kuhnel (Va. Bar #28151)
Kevin P. Oddo (Va. Bar #27503)
John T. Jessee (Va. Bar #18745)
Joseph M. Rainsbury (Va. Bar #45782)
LeClairRyan, a Professional Corporation
1800 Wells Fargo Tower
Suite 1200
Roanoke, Virginia 24006
Telephone: (540) 510-3020
Facsimile: (540) 510-3050
paul.kuhnel@leclairryan.com
kevin.oddo@leclairryan.com
john.jessee@leclairryan.com
joseph.rainsbury@leclairryan.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.    This brief complies with the type-volume limitation of Fed.

R. App. 32(a)(7)(B) because this brief contains 4912 words, excluding

the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.

32(a)(6) because this brief has been prepared in a proportionally spaced

typeface using Microsoft Word 2010, Times New Roman, 14 point font.

August 14, 2015

       /s/    Joseph M. Rainsbury

Attorney for SCA Credit Services, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2015, I electronically filed the foregoing Brief of Appellee with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system on the following:

Ralph C. Young, Esquire
Christopher B. Frost, Esquire
Steven R. Broadwater, Esquire
Jed R. Nolan, Esquire
HAMILTON, BURGESS, YOUNG
   & POLLARD, pllc
P. O. Box 959
Fayetteville, West Virginia 25840

Troy N. Giatras, Esquire
Matthew Stonestreet, Esquire
The Giatras Law Firm, PLLC
118 Capitol Street, Suite 400
Charleston, West Virginia 25301

 

                    /s/
          Attorney for SCA Credit Services, Inc.